UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 18Cr10343 |
| v. | VIOLATIONS: |
| JOSE AVILA, a/k/a "Joe Avila," | Count One: Conspiracy (18 U.S.C. § 1349) |
| Defendant | Counts Two – Six: Honest Services Mail Fraud (18 U.S.C. § 1346) |
| | Count Seven: Mail Fraud (18 U.S.C. § 1341) |
| | Aiding and Abetting (18 U.S.C. § 2) |
| | Forfeiture (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment:

General Allegations

1. The defendant, Jose AVILA, a/k/a "Joe Avila" ("AVILA"), was a resident of Danvers, Massachusetts.

2. Company A was a provider of custodial, maintenance and other services—including cleaning, snow shoveling, and other types of routine maintenance—to commercial clients throughout the United States, including in Massachusetts and elsewhere.

3. Lou Amaral ("Amaral") was a resident of Malden, Massachusetts. Amaral was employed by Company A as a Senior Director of Operations. Amaral owed a fiduciary duty to Company A.

4. Beginning in or about 2011, Amaral oversaw Company A's Special Services department, an internal labor pool that Company A relied on as needed to perform janitorial work, snow hauling, roof clearing, office moves and painting. In this capacity, Amaral had the power to award temporary labor contracts to outside vendors.

5. Company B was a temporary employment agency with multiple offices in the District of Massachusetts. Company B was owned by two individuals, Owner 1 and Owner 2.

6. In or about 2011, at the direction of Amaral, Company A engaged Company B to provide temporary labor on certain Company A jobsites.

7. AVILA was employed by Company B as a general manager, and was responsible for managing the Company A account.

Overview of the Conspiracy and the Honest Services Fraud Scheme

8. In or about and between at least September 2013 and May 2014, in the District of Massachusetts and elsewhere, AVILA agreed with Amaral and others known and unknown to the Grand Jury to deprive Company A of the right to Amaral's honest services, by providing bribes and kickbacks to Amaral in exchange for Amaral's agreement to retain Company B to provide temporary labor services to Company A.

Objects of the Conspiracy and the Honest Services Fraud Scheme

2

9. A principal purpose and object of the conspiracy and of the honest services fraud scheme was for Company B to make money by using bribes and kickbacks to obtain lucrative temporary labor assignments from Company A.

10. Another purpose and object of the conspiracy and of the honest services fraud scheme was for Amaral to make money by accepting bribes and kickbacks from AVILA and Company B in exchange for awarding temporary labor assignments to Company B.

Manner and Means of the Conspiracy and the Honest Services Fraud Scheme

11. Among the manner and means by which AVILA, Amaral and others known and unknown to the Grand Jury accomplished the objects of the conspiracy were the following:

    a. Amaral directed Company A to retain Company B to provide temporary labor services.

    b. In exchange for that work, AVILA directed Company B employees to mail bribes and kickbacks to Amaral.

Acts in Furtherance of the Conspiracy and the Honest Services Fraud Scheme

12. On or about various dates between September 2013 and May 2014, AVILA, together with Amaral and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in furtherance of the conspiracy and the honest services fraud scheme:

13. AVILA directed Company B to make regular payments to Amaral, typically in the amount of $5,000.

14. For example, on or about April 9, 2014, April 15, 2014, April 23, 2014, April 30, 2014, and May 6, 2014, employees of Company B, acting at AVILA's direction, issued payments of $5,000 to Amaral, which were sent by United States Mail and by private

commercial interstate carrier to Amaral. Neither AVILA nor Amaral disclosed these payments to Company A.

15. In exchange for those bribes and kickbacks, Amaral caused Company A to retain Company B to perform temporary labor services, for which services Company A paid Company B through bank checks sent by United States Mail.

16. For example, Company A issued checks to Company B in or about the amounts and on or about the dates set forth below:

| Date of Check | Amount |
| --- | --- |
| Jan. 6, 2014 | $76,051.18 |
| Jan. 30, 2014 | $184,470.26 |
| Feb. 18, 2014 | $85,658.61 |
| March 19, 2014 | $181,072.22 |
| March 26, 2014 | $40,379.79 |

### The Mail Fraud Scheme

17. At AVILA's direction, Company B also falsely billed Company A for gift cards AVILA provided to Amaral and others.

18. As part of the false-billing scheme, on or about March 3, 2014, an employee of Company B ("Employee 1") sent an e-mail to AVILA asking whether Employee 1 should bill $2,118 worth of American Express gift cards to Company A.

19. On or about April 7, 2014, Employee 1 sent a second e-mail to AVILA asking again about the $2,118 in American Express gift cards, as well as about a second purchase of $3,177 in gift cards. Employee 1 asked AVILA how to bill the gift cards.

20. On or about April 15, 2014, Employee 1 sent an email to a second employee of Company B ("Employee 2") directing Employee 2 to invoice the $2,118 in gift cards to Company A as labor for "Osram in Beverly, MA," and to bill the $3,177 in gift cards to Company A as "snow labor" for a storm that occurred on February 18, 2014. Employee 1 directed Employee 2 to e-mail the invoices to AVILA and wrote, "If you have any question, please call Joe Avila."

21. Four days later, on or about April 18, 2014, a third employee of Company B ("Employee 3") emailed AVILA and Amaral invoices in the amount of $2,329.80 and $3,494.70, which reflected the cost of the two sets of American Express gift cards, plus a 10% markup. The $2,329.80 invoice was falsely described as "CHA Clients" for "Week Ending 2/18/14." The $3,494.70 invoice was falsely described as pay for "Osram" for the "week ending 4/13/14."

22. Company A paid the false invoices by check, which it mailed to Company B on or about July 1, 2014.

## COUNT ONE
Conspiracy to Commit Honest Services Mail Fraud
(18 U.S.C. § 1349)

23. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and charges that:

24. In or about and between September 2013 and May 2014, the defendant,

JOSE AVILA, a/k/a "Joe Avila,"

conspired with Lou Amaral and others known and unknown to the Grand Jury to commit honest services mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and to deprive Company A of its intangible right to the honest and faithful services of its employee, Amaral, through bribes and kickbacks, for the purpose of executing and attempting to execute the scheme, to knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, payments from Company A to Company B, and bribes and kickbacks from Company B to Amaral, in violation of Title 18, United States Code, Sections 1341 and 1346.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIX
Honest Services Mail Fraud; Aiding and Abetting
(18 U.S.C. §§ 1341 and 1346 and 2)

25. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

26. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOSE AVILA, a/k/a "Joe Avila,"

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and to deprive Company A of its right to the honest and faithful services of its employee, Lou Amaral, through bribes and kickbacks did, for the purpose of executing and attempting to execute such scheme, knowingly cause to be delivered by mail and by any private commercial interstate carrier according to the direction thereon, the following payments from Company B to Amaral:

| COUNT | APPROXIMATE DATE | MAILING |
|---|---|---|
| 2 | April 9, 2014 | $5,000 payment |
| 3 | April 15, 2014 | $5,000 payment |
| 4 | April 23, 2014 | $5,000 payment |
| 5 | April 30, 2014 | $5,000 payment |
| 6 | May 6, 2014 | $5,000 payment |

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

7

## COUNT SEVEN
## Mail Fraud; Aiding and Abetting
## (18 U.S.C. §§ 1341 and 2)

25. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

26. In or about and between March 2014 and July 2014, in the District of Massachusetts and elsewhere, the defendant,

JOSE AVILA, a/k/a "Joe Avila,"

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did, for the purpose of executing such scheme, and attempting to do so, knowingly cause to be delivered by mail and commercial interstate carrier according to the direction thereon, payments from Company A to Company B, purportedly for temporary labor services, which were in fact for gift cards provided by Company B to Company A employees.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further charges that:

27. Upon conviction of the offenses charged in violation of Title 18, United States Code, Sections 1341 and 1349, as set forth in Counts One through Seven of this Indictment, the defendant,

JOSE AVILA,
also known as Joe Avila,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, without limitation, the following:

    a. $80,000 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

28. If any of the property described in Paragraph 27 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 27 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
ERIC S. ROSEN
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS                 September 25, 2018

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk           9/25/2018 @ 12:29 pm